# EXHIBIT F

STATE OF MICHIGAN

IN THE 30TH CIRCUIT COURT FOR THE COUNTY OF INGHAM

GENERAL TRIAL DIVISION

JEAN DUFORT BAPTICHON,

      Plaintiff,

v.

THOMAS M. COOLEY LAW
SCHOOL,

      Defendant.

**OPINION AND ORDER REGARDING
DEFENDANT'S MOTION FOR
SUMMARY DISPOSITION**

HON. PAULA J.M. MANDERFIELD

Docket No.: 03-1784-CZ

This matter comes before the Court on Defendant's motions for summary disposition

pursuant to MCR 2.116(C)(8) and (10). The Court, having reviewed the Defendant's motions,

Plaintiff's brief in response, and having listened to oral argument in open court on October 13,

2004, issues the following Opinion and Order:

## OPINION

### I. FACTS

Plaintiff first applied and was accepted to Cooley Law School in 1999. Plaintiff began taking classes in the Fall of 2000 and, at that time, signed an acknowledgment form to signify that he had listened to a presentation regarding Cooley's academic policies and that he understood the same. [Plaintiff's Deposition at pp. 13-17.] After two terms, Plaintiff decided to withdraw from Cooley. [Plaintiff's Deposition at pp. 29-31.]

Plaintiff reapplied to Cooley at the end of May 2001 and his application to restart was accepted. After being accepted for a restart, Plaintiff once again signed an acknowledgment form to signify that he had reviewed and understood the policies and procedures employed by Cooley Law School. [Plaintiff's Deposition at pp. 39-40.]

In his first term following his withdrawal and restart, Plaintiff attained a 2.0 GPA, however in the subsequent two term Plaintiff received 0.75 and 0.88 GPAs, respectively. These grades left him with a 1.45 cumulative GPA and resulted in receiving first- and second-term academic probation pursuant to § V(B)(2)(a) of Cooley's academic policy. Plaintiff testified that, at that time, he understood he needed to raise his cumulative GPA to at least a 2.0 after his second term of academic probation or else he would be academically dismissed. [Plaintiff's Deposition at pp. 40-41, 44-45, 51.]

Plaintiff received a 2.5 after his second probationary term, which raised his cumulative GPA to a 1.63. Based upon his failure to attain a cumulative GPA of 2.0, Plaintiff was academically dismissed and notified of the same via letter dated February 4, 2003. Attached to that letter was a document which set forth Cooley's policy on readmission for students who have

2

been academically dismissed. Plaintiff testified that he had read the enclosed policy at that time.

[Plaintiff's Deposition at pp. 59-62.]

On March 24, 2003, Associate Dean Amy Timmer notified Plaintiff, via letter, of

Cooley's decision to accept her application for readmission. Dean Timmer's letter informed

Plaintiff of the courses he would need to take in his readmission term and a requirement that he

meet with Dr. Patricia Wilson of Cooley's Academic Resource Center as often as requested. The

paragraph of the letter that is specifically at issue in this case provided as follows:

> The Admissions Committee has asked me to remind you that you
> only have one term to remove yourself from academic probation
> status. **There will be no second readmission in the event that
> you fail to attain an overall GPA of 2.0 at the end of Trinity
> Term**. If you are obtaining financial aid and desire to continue
> receiving financial aid for next term, you must contact the
> Financial Aid Office as soon as possible. [Emphasis added.]

[See Exhibit 14 of Defendant's Brief.]

Included with Dean Timmer's letter was an Acknowledgment form which the Plaintiff

was required to sign and return. The Acknowledgment form provided, in pertinent part:

> I acknowledge that, in order to continue my studies at the Thomas
> M. Cooley Law School, I must attain a 2.00 grade point average in
> my required courses for Trinity Term, 2003. If I do not achieve
> this grade point average, I will be academically dismissed from the
> law school when grades are reported for that term. I also
> understand that I must meet with Dr. Patricia Wilson of the ARC
> as many times as she says.
>
> I fully understand the terms of my readmission and sign this
> agreement with every intention to comply with these terms. If I am
> academically dismissed at the conclusion of the term, I understand
> that I may only return to Thomas M. Cooley Law School as a new
> student through the Admissions Office.

[See Exhibit 15 of Defendant's Brief.]

3

Plaintiff met with Dr. Wilson as required and he testified that he remembered Dr. Wilson informing him that she explained he would be dismissed "...if [he did not] do well [that] term..." [Plaintiff's Deposition at p. 74.] In fact, Dr. Wilson testified via affidavit that she specifically "reviewed the letter grades and 'quality points' he would need to earn in his classes [the readmission] term to raise his cumulative GPA from the 1.63 it was when he was readmitted to the required cumulative 2.0." [Affidavit of Patricia Wilson, Ph.D., p. 2, ¶ 6.]

Plaintiff received a 3.00 GPA for his readmission term which only raised his overall cumulative GPA to a 1.96. [See Exhibit 16 to Defendant's Brief.] Because Plaintiff failed to attain an overall cumulative GPA of 2.0 or higher, Plaintiff was notified by letter, dated September 30, 2003, that he was academically dismissed from Cooley Law School pursuant to the terms of Cooley's readmission policies. [See Exhibit 17 of Defendant's Brief.]

Plaintiff now brings the instant Complaint before the Court, containing four remaining Counts: (1) breach of contract; (2) promissory/equitable estoppel; (3) violation of Michigan's Consumer Protection Act; and (4) fraud/misrepresentation. All of these claims are premised on Plaintiff's argument that the "contract" or "agreement" between the parties regarding Plaintiff's readmission consisted solely of the terms and conditions contained in Dean Timmer's March 24, 2003 letter and the Acknowledgment Form executed by the Plaintiff.

Defendant moves for summary disposition of Plaintiff's claims pursuant to MCR 2.116(C)(8) and (10), arguing that the Plaintiff has failed to state a claim such that relief could be granted or, in the alternative, that no genuine issue of material fact exists in this case that would warrant a finding of liability on the part of Defendant.

## II. ANALYSIS

### A. STANDARD OF REVIEW

A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmoving party. Wade v Dep't of Corrections, 439 Mich 158, 162 (1992). A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are "so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." Id at 163. When deciding a motion brought under this section, a court considers only the pleadings. MCR 2.116(G)(5). Maiden v Rozwood, 461 Mich 109 (1999).

A motion brought pursuant to MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. The reviewing court should evaluate a motion under (C)(10) by considering the substantively admissible evidence actually proffered in opposition to the motion. A reviewing court may not employ a standard citing the mere possibility that the claim might be supported by evidence produced at trial. A mere promise is insufficient under our court rules. Maiden v Rozwood, 461 Mich 109 (1999).

### B. DISCUSSION

#### 1. Breach of Express or Implied Contract

Defendant argues that it was not reasonable for Plaintiff to believe that he only needed a 2.0 GPA in his classes for the readmission term when Cooley's policy clearly mandates that a student must attain an overall cumulative 2.0 GPA. In this regard, Defendant asserts the

5

"contract" between a private academic institution and a student is encompassed and comprised of all of the institution's written policies and procedures. Defendant contends that Plaintiff defines this contractual relationship between the parties far too narrowly.

Plaintiff, in turn, argues that the terms of the Plaintiff's "contract" for readmission were set forth solely in Dean Timmer's March 24, 2003 letter and in the Acknowledgment Form which Plaintiff signed and returned to Cooley. Plaintiff asserts that any policies outside of these two documents that is in conflict is, in essence, superceded by the terms of these two documents.

It has been long understood that there is an implied understanding between a private academic institution and a student that the student will not be arbitrarily dismissed. Booker v Grand Rapids Medical College, 156 Mich 95, 100 (1909). Although a relationship between a student and a private academic institution may be analyzed as a contractual one, an institution's decision making, based solely upon academic criteria, is to be given deferential treatment by a reviewing court. Doherty v Southern College of Optometry, 862 F2d 570, 577 (CA 6, 1988) (citing Mahavongsanan v Hall, 529 F2d 448, 449-450 (CA 5, 1976). Because of the deference afforded academic institutions in purely academic decision making, a court will not find a contractual violation in denying a student a degree or dismissing a student based upon academic criteria, absent a showing of arbitrary and capricious action by the institution. In Re Johnston Petition, 365 Mich 509, 510 (1962). It is with this level of deference in mind, that the Court now turns to the arguments made by the parties with respect to the Plaintiff's breach of contract claim.

Defendant argues that it was unreasonable for Plaintiff to believe that no other policy applied to him with respect to her readmission to Cooley beyond that which was contained in Dean Timmer's letter and the Acknowledgment Form.

6

Plaintiff counters that these two documents do form a contract between the parties, in and of themselves and that nowhere in Dean Timmer's letter nor in the Acknowledgment was the word "cumulative" used in referencing the GPA requirement. Therefore, Plaintiff argues that it was arbitrary and capricious for Defendant to academically dismiss her for failing to attain a cumulative GPA of 2.0 or higher.

The Court finds the Plaintiff's argument to be based largely upon semantics and little else. In looking at the March 24, 2003 letter from Dean Timmer and the Acknowledgment Form, the Court notes that it is just as important to consider what is not contained therein. Assuming, *arguendo*, that these documents do constitute a contract between the parties, nowhere on the face of either document is there an integration clause stating that all of the terms and conditions of Plaintiff's readmission are contained therein. Furthermore, neither document explicitly exempts Plaintiff from having Cooley's other policies enforced against him.

Also, the Court notes that for Plaintiff to assume Cooley's general readmission policies did not apply to him would simply defy logic. First, at the orientation for new students, Plaintiff was required to acknowledge that he had reviewed and understood all of Cooley's academic policies, including, presumably, Cooley's policy on readmission. [Plaintiff's Deposition, pp. 13-17.] Second, Plaintiff voluntarily withdrew and retarted as a new student, thus requiring him to once again execute a document signifying his review and understanding of Cooley's policies. [Plaintiff's Deposition at pp. 39-40.] Third, on February 4, 2003, when Plaintiff received his dismissal letter, he also received a document that set forth Cooley's policy on readmission and Plaintiff testified that he had read through the policy at that time. [Plaintiff Deposition, pp. 59-62.] Finally, in the fifth paragraph of Dean Timmer's letter it explicitly states that "[t]he

7

Admissions Committee has asked me to remind you that you only have one term to remove yourself from academic probation status." [See Exhibit B of Plaintiff's Brief.] This is important because Plaintiff himself admitted that he understood the only way to remove himself from academic probation was to achieve a cumulative GPA of 2.0 or better. [Plaintiff's Deposition, pp. 25-26, 44-45, 51.]

Based on all the facts set forth above, the Court finds there is no genuine issue of material fact that would allow for Plaintiff to reasonably believe he had a valid contract to continue as a law student without attaining an overall cumulative GPA of 2.0 or better. Therefore, Plaintiff's Count I, alleging breach of express or implied contract, is hereby dismissed pursuant to MCR 2.116(C)(10).

### 2. Promissory/Equitable Estoppel

In Count II of Plaintiff's Complaint, Plaintiff argues that Defendant should be estopped from dismissing his because Plaintiff was promised that as long as he attained a 2.0 GPA in his required courses for the Trinity Term 2003 and met with Dr. Patricia Wilson as many times as required, he would not be dismissed. [See Plaintiff's Complaint, p. 7, ¶ 31.]

Plaintiff's claims in Count II on estoppel grounds suffer many of the same deficiencies as his claim for breach of contract. Read literally, all that Dean Timmer's letter and the Acknowledgment Form promise is that Plaintiff would be dismissed from the Defendant-law school if he failed to attain a GPA of 2.0 or better in the Trinity Term 2003. Neither document stated that he would not be dismissed if he failed to raise his cumulative GPA above a 2.0. As such, the Court cannot discern that there was any "promise" that could be said to have created a detrimental reliance by Plaintiff.

8

This Court also finds the case cited by the Defendant, Olsson v Board of Higher Education. 402 NE2d 1150 (NY 1980), to be instructive. In Olsson, a professor had erroneously explained to students that they needed to pass three out of five questions to pass an exam when in reality the policy required they pass four out of five. Plaintiff in Olsson argued that he had detrimentally relied on the professors statement and had only focused his attention on three of the five questions. The court found that plaintiff could not show any detrimental reliance because "there was no connection between Olsson's exposure to the 'three out of five' comment and his failure to achieve a passing score." Olsson, 402 NE2d at 1153.

In the present case, Plaintiff suffers the same inability to show any detrimental reliance. There is simply no connection between the Plaintiff's execution of the Acknowledgment indicating that he must attain a term GPA of 2.0 in his readmission term or face dismissal and his failure to attain a cumulative GPA of 2.0 or better. Plus, as Plaintiff had indicated in his deposition, he studied as hard as he could regardless of whatever promises he felt Cooley had made to him. [Plaintiff's Deposition, pp. 130-131.]

Based on the above, the Court finds there is no genuine issue of material fact that there was any promise made by the Defendant that could have resulted in detrimental reliance on the part of the Plaintiff. Therefore, Plaintiff's Count II, alleging promissory/equitable estoppel, is hereby dismissed pursuant to MCR 2.116(C)(10).

### 3. Michigan Consumer Protection Act

In Count III of Plaintiff's Complaint he alleges that Defendant violated the Michigan Consumer Protection Act ("MCPA"), MCL 445.901 et seq., by deceiving him and making certain misrepresentations regarding his readmission to Defendant-law school. [See Plaintiff's

9

Complaint, pp. 9-11, ¶ 39-50.]

As the Court has discussed above, there was never any misrepresentations made by the Defendant concerning the Plaintiff's readmission. Dean Timmer's March 24, 2003 letter and the Acknowledgment Form, although perhaps inartfully drawn, stated truthful criteria concerning the Plaintiff's readmission. Plaintiff would in fact be dismissed if he failed to attain a term GPA of 2.0. Also, Dean Timmer's letter clearly indicated that the Plaintiff had one term to remove himself from academic probation status. Beyond this fact however, there is another threshold concern regarding the Plaintiff's claim on MCPA grounds.

In Zine v Chrysler Corp, 236 Mich App 261 (1999), the Michigan Court of Appeals held that Michigan Consumer Protection Act does not cover the purchase of goods or services to be used for a business or commercial purpose. Zine, 236 Mich App at 273. Defendant argues that Plaintiff's purpose for purchasing an education from Defendant-law school was to attain a law degree and to eventually earn a living. As such, Defendant asserts that this constitutes a commercial or business purpose and the MCPA does not apply.

The plaintiff in Zine purchased a truck to use for business travel. As such, the Court found it was undisputed the plaintiff used the truck purchased for a business purpose and thus, the purchase fell outside the purview of the MCPA. Zine, 236 Mich App at 274-275.

Although Zine is not directly on point with the matter currently before this Court, the analysis nonetheless applies to the facts of this case. The Plaintiff himself testified that he intended to use his law degree in his work and that he wanted to use the law degree to go into his own business. [Plaintiff's Deposition, pp. 36, 110, 144, 151.] Furthermore, the Complaint does not indicate that the education was being purchased for any type of personal use. The Court

10

therefore finds the Plaintiff has failed to state a valid claim for a violation of the Michigan Consumer Protection Act in that the education purchased from the Defendant was clearly intended for a commercial or business purpose. That fact notwithstanding, the Court finds there is no genuine issue of material fact that Defendant made any material misrepresentation with regard to Plaintiff's readmission. Therefore, Count III of Plaintiff's Complaint is hereby dismissed pursuant to MCR 2.116(C)(10).

### 4. Fraud/Misrepresentation

Count VI of Plaintiff's Complaint sets forth allegations of fraud and/or misrepresentation against the Defendant in this matter. The Court notes that in order to state a valid claim for fraud in Michigan, a plaintiff must show a materially false representation made by a defendant, that the defendant knew it was false and intended plaintiff to act on it, and that plaintiff did act on it, to his or her detriment. Hord v Environmental Research Institute of Michigan, 463 Mich 399 (2000).

Without belaboring the point, Plaintiff cannot state a valid claim for fraud in this case. As stated above, in the section dealing with estoppel, Plaintiff cannot show any material misrepresentation. At most, all Plaintiff can show is that neither of the two documents include the word "cumulative." However, as discussed previously, none of the representations actually made were patently false. Also fatal to Plaintiff's claim, Plaintiff cannot show any detrimental reliance in response to any of the representations made in these documents.

For these reasons and for those set forth in the sections above, the Court finds there is no genuine issue of material fact as to the lack of any false statement on the part of the Defendant nor to the lack of any detrimental reliance on the part of the Plaintiff. Therefore, Count VI of Plaintiff's Complaint is hereby dismissed pursuant to MCR 2.116(C)(10).

11

## ORDER

For reasons more fully discussed above:

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Disposition is

**GRANTED** pursuant to MCR 2.116(C)(10) and Plaintiff's Complaint is **DISMISSED** with

prejudice.

Pursuant to MCR 2.602(3), this Opinion and Order resolves the last pending claim in this

matter and closes the case.

Date:  November 2, 2004

Hon. Paula J.M. Manderfield
Circuit Court Judge

### PROOF OF SERVICE

I certify that I mailed a copy of the foregoing **OPINION AND ORDER** to all attorneys of record and unrepresented parties as disclosed by the Court files, by mailing same to their respective addresses on November 2, 2004 and depositing same in the State of Michigan Inter-Departmental Mail or the United States Mail at Lansing, Michigan.

Sandra L. Russell
Judicial Assistant

cc:    Joseph D. Curi
       The Curi Law Office, PLLC
       903 East Grand River Avenue
       East Lansing, Michigan 48823

       James B. Thelen
       Miller Canfield Paddock and Stone, PLC
       One Michigan Avenue, Suite 900
       Lansing, Michigan 48933