JOHN T. MACDONALD JR., CHELSEA A. PEJIC,
SHAWN HAFF, STEVEN BARON, DIMPLE KUMAR,
CARRIE KALBFLEISCH, ANDERS CHRISTENSEN,
DANNY WAKEFIELD, DAN GUINN,
BENJAMIN FORSGREN, SHANE HOBBS, and
KEVIN PRINCE,

    Plaintiffs,                 Case No. 11-cv-00831

vs.                                      Hon. Gordon J. Quist

THOMAS M. COOLEY LAW SCHOOL and     **ORAL ARGUMENT**
DOES 1-20,                                 **REQUESTED**

    Defendants.

---

| | |
|---|---|
| Strauss Law PLLC<br>Jesse Strauss<br>305 Broadway, 9th Floor<br>New York, NY 10007<br>(212) 822-1496<br>jesse@strausslawpllc.com<br>(212) 822-1496 | Miller, Canfield, Paddock and Stone, PLC<br>Michael P. Coakley (P34578)<br>Brad H. Sysol (P58138)<br>Paul D. Hudson (P69844)<br>150 West Jefferson, Suite 2500<br>Detroit, MI 48226<br>(313) 963-6420<br>coakley@millercanfield.com<br>sysol@millercanfield.com |
| The Hyder Law Firm, P.C.<br>Steven Hyder (P69875)<br>PO Box 2242<br>Monroe, MI 48161<br>(734) 757-4586<br>hyders@hyderlawfirm.com<br>Attorneys for Plaintiffs | hudson@millercanfield.com<br>Attorneys for Defendant<br>Thomas M. Cooley Law School |

---

# REPLY BRIEF IN SUPPORT OF
# DEFENDANT THOMAS M. COOLEY LAW SCHOOL'S
# MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES……………………………………………………………….iii

I. PLAINTIFFS' AMENDED COMPLAINT VIOLATES RULE 8…………………1

II. FAILURE TO JOIN THE ABA AND NALP……………………………………...2

III. PREEMPTION……………………………………………………………………..4

IV. STATUTE OF LIMITATIONS…………………………………………………….6

V. PLAINTIFFS FAIL TO STATE CLAIMS FOR VIOLATION OF
THE MCPA, FRAUD, AND NEGLIGENT MISREPRESENTATION……  7

    A. Plaintiffs' Fail to State a Claim for Violation of the MCPA
Because Their Single-Minded Pursuit Was Commercial in Nature
and Thus the MCPA Does Not Apply……………………………..  7

    B. Plaintiffs' Fraud And Negligent Misrepresentation Claims Fail
Because Plaintiffs Failed To Identify Any Specific False
Statement On Which Any Of Them Relied, And Failed To Plead
Reasonable Reliance………………………………………………. 9

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Baptichon v. Thomas M. Cooley Law School*,
2009 WL 5214911, *6-7 (W.D. Mich. Dec. 28, 2009)……………………………..8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 127 S.Ct. 1955 n. 14 (2007)………………………………………11

*Bobbitt v. Academy of Court Reporting, Inc.*,
252 F.R.D. 327 (E.D. Mich. 2008)………………………………………………8-9

*Boles v. Greeneville Housing Auth.*, 468 F.2d 476 (6th Cir. 1972)……………….. 2-4

*Chae v. SLM Corp.*, 593 F.3d 936 (9th Cir. 2010)…………………………………. 5

*Dersch v. BAC Home Loan Servicing LP*,
2011 WL 3100561, *5 (W.D. Mich. 2011)………………………………………12

*Gora v. Galbert*, 2009 WL 3233849 (W.D. Mich. Sept. 30, 2009)………………....1

*Hines v. Davidowitz*, 312 U.S. 52 (1941)…………………………………………. 5

*NLRB v. Doug Neal Mgmt. Co.*, 620 F.2d 1133 (6th Cir. 1980)………………….. 3, 4

*Sault Ste. Marie Tribe of Chippewa Indians v. Hamilton*,
2010 WL 299483, *6 (W.D.Mich. 2010)……………………………………….. 12

*Stalker v. MBS Direct, LLC*, 2011 WL 797981 (E.D. Mich. March 1, 2011)……... 8

*United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
342 F.3d 634 (6th Cir. 2003)……………………………………………………. 11

*United States ex rel. Fowler v. Caremark RX, L.L.C.*,
496 F.3d 730, 740 (7th Cir. 2007)………………………………………………. 12

*U.S. ex rel. Marlar v. BWXT Y-12, L.L.C.*,
525 F.3d 439 (6th Cir. 2008)…………………………………………………… 11

**State Cases**

*Cummins v. Robinson Twp.*, 283 Mich. App. 677 (2009)…………………………. 13

*Hord v. Environmental Res. Inst.*, 463 Mich. 399 (2000)…………………………. 13-14

# TABLE OF AUTHORITIES (cont.)

**Page(s)**

**State Cases (cont.)**

*Liss v. Lewiston-Richards, Inc.*, 478 Mich. 203 (2007)……………………………… 9

*Zine v. Chrysler Corp.*, 236 Mich. App. 261 (1999)………………………………. 7

**Federal Rules & Statutes**

Fed. R. Civ. P. Rule 8…………………………………………………………………… 1, 2

Fed. R. Civ. P. Rule 8(a)……………………………………………………………… 10

Fed. R. Civ. P. Rule 9(b)………………………………………………………………10-12

Fed. R. Civ. P. Rule 12(b)(6)…………………………………………………………… 8

Fed. R. Civ. P. Rule 19……………………………………………………………….. 3

20 U.S.C. § 1092(a)(1)……………………………………………………………….. 5

20 U.S.C. § 1092(a)(1)(R)……………………………………………………………. 13

**State Rules**

MCL 445.904(1)(a)………………………………………………………………….. 9

**Scholarship**

Wright & Miller, Federal Practice and Procedure § 1281 at 709 (3d ed. 2004)…… 1

3A Moore's Federal Practice P 19.05(2)…………………………………………... 3

Amidst the 155 pages of vitriolic hyperbole that Plaintiffs and their counsel have filed thus far in this case (consisting of two versions of their complaint and an opposition brief to Cooley Law School's Motion to Dismiss), Plaintiffs have not specifically identified a false statement—specific to time, place, and content, that is—that any one of them can say they actually read and relied upon in deciding to apply to, or remain enrolled at, Cooley. Nor have they properly pled, amidst all the bloat in their filings, short and plain statements of their claims.

With no remaining right to amend their complaint, and with presumably their best arguments stated in the opposition brief, it is evident that Plaintiffs' Michigan Consumer Protection Act, fraud, and negligent-misrepresentation claims fail to state claims upon which relief can be granted. The Court should therefore grant Cooley's motion to dismiss the Amended Complaint in its entirety and dismiss this action with prejudice.

## I. PLAINTIFFS' AMENDED COMPLAINT VIOLATES RULE 8

Plaintiffs argue that their Amended Complaint does not violate Rule 8 because, they say, 64 pages and 126 paragraphs were necessary to "contextualize" the dispute. (Dkt 37, Br. at 44.) The problem is that the Amended Complaint is all "context" and no substance. Plaintiffs ramble on about extraneous matters but nowhere specifically state that even one of them actually saw, relied upon, or at the time of decision or action was even aware of the existence of a specific false statement that in fact formed the purported basis of their fatally flawed fraud and misrepresentation claims. Instead, Plaintiffs ask the Court to find a claim for them, and, if the Court can't find one, to let them try to find one later in discovery. (*See* Dkt 37, Br. at 30-31.)

"Unnecessary prolixity in a pleading places an undue burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Gora v. Galbert*, 2009 WL 3233849 (W.D. Mich. Sept. 30, 2009) (quoting Wright & Miller, Federal Practice and Procedure § 1281 at 709 (3d ed. 2004)). Plaintiffs' Amended

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

Complaint is a "mass of verbiage" that places an undue burden on the Court and Cooley. The Amended Complaint violates Rule 8 and should be dismissed with prejudice—especially because after Plaintiffs burdened the Court and Cooley with an original complaint that violated Rule 8, they turned right around and filed an amended complaint 20 pages longer than the first that did not add a single new claim or identify the specific statements on which their claims are purportedly based. *Compare* Dkt 22 to Dkt 1.

## II. FAILURE TO JOIN THE ABA AND NALP

Plaintiffs argue that their Amended Complaint does not fail to join the ABA and NALP because, they say, "[a]t no time and in no place does the FAC demand any relief from the ABA or NALP, or demand systemic relief." (Pls.' Br. At 11.) That is simply not true. In the very first sentence of the very first numbered paragraph of the Amended Complaint, Plaintiffs say that "*This action seeks to remedy a systemic, ongoing fraud* that is ubiquitous in the legal education industry[.]" (Am. Compl. ¶ 1; emphasis added.) They say that their goal is to "bring an element of 'sunlight' or transparency to the way law schools [plural, that is, *system-wide*] report post-graduate employment." (*Id.*) And then Plaintiffs level *solely* against the ABA and NALP five pages of the Amended Complaint, titled "Role of the ABA." (*See id.* ¶¶ 85-92.) Plaintiffs' Amended Complaint is aimed at ABA and NALP standards, not at Cooley's compliance with them, Cooley's presence in the caption and demand for relief notwithstanding.[1]

This case is on all fours with *Boles v. Greeneville Housing Auth.*, 468 F.2d 476 (6th Cir. 1972). There, a plaintiff did not expressly seek relief from the federal Department of Housing and Urban Development (HUD) in the complaint, but challenged a building project approved by

---

[1] Plaintiffs argue that in paragraph 60 of the Amended Complaint they have alleged that Cooley fails to comply with ABA standards. (*See* Pls.' Br. at 11-12.) But the allegations in that paragraph are entirely conclusory and not supported by a single factual allegation. Nowhere do Plaintiffs state specific facts showing Cooley to be out of compliance with any ABA or NALP standards.
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

-2-

HUD regulations. The Sixth Circuit held that the fact that the plaintiff did not expressly seek relief from HUD did not mean HUD was not a necessary party under Rule 19. The question was whether the "resolution of the[] issues would have an impact beyond the parties presently before the court," and the Court held that the plaintiff's challenge to a HUD-approved building project was necessarily a challenge to HUD's regulations—despite the fact that the plaintiff had avoided directly seeking relief from HUD in the complaint. *Id.* at 478. Thus, HUD was an indispensible party, and the Court held that it could not proceed to a decision on the merits in HUD's absence. *Id.* at 480.

The same is true for the ABA and NALP here, despite the fact that Plaintiffs have tried to avoid naming them as parties. The Sixth Circuit has explained that "[t]he presence of an indispensable party 'is required in order that the court may make an adjudication equitable to all persons involved.'" *NLRB v. Doug Neal Mgmt. Co.*, 620 F.2d 1133, 1139 (6th Cir. 1980) (quoting 3A Moore's Federal Practice P 19.05(2)). "Rule 19 . . . provides criteria for determining whether an unjoined party's interests are sufficiently substantial that a court should not proceed to a decision on the merits in its absence." *Id.* at 1138 (quoting *Boles*, 468 F.2d at 478). And "'*it is not necessary that an absent person would be bound by the judgment in a technical sense. It is enough that as a practical matter his rights will be [a]ffected.*'" *Id.* at 1139 (quoting Moore's at P 19.07-1(2)-1) (emphasis added). "[W]here such a community of interest exists that no decree can be rendered without affecting the interest of the absent party, that party is indispensable." *Id.* (quoting Moore's at P 19.18(1)). That is because "the interests of an unjoined party are especially vulnerable in that they are not vigorously asserted by counsel before the court[, and a]s a result it is possible that the true nature and extent of these interests may not be explored until after they are irreparably prejudiced." *Id.* (quoting *Boles*, 468 F.2d at 479 n.3).

-3-

Here, "as a practical matter," the ABA and NALP's "rights will be [a]ffected" in this action, which seeks to rewrite their employment reporting requirements. *Id.* at 1138. Plaintiffs certainly have failed to meet their burden of demonstrating otherwise. *Id.* at 1138-39 ("Where an initial appraisal of the facts reveals the possibility that an unjoined party is arguably indispensable, the burden devolves upon the party whose interests are adverse to the unjoined party to *negate* the unjoined party's indispensability to the satisfaction of the court") (quoting *Boles*, 468 F.2d at 478; emphasis added). Plaintiffs don't even come close to "negating" the ABA and NALP's indispensability here.[2]

The interests of the ABA and NALP "are sufficiently substantial that [this] court should not proceed to a decision on the merits in [their] absence." *Id*.

### III. PREEMPTION

Plaintiffs identify several *other* fields the Higher Education Act (HEA) does not preempt, but cite no cases holding that the HEA does not preempt the field of law school employment and salary reporting. (*See* Pls.' Br. at 12-19.) Plaintiffs' argument against preemption rests on their assertion that "[c]learly, the statutory scheme laid out by Congress does not express a preference for uniformity," but, "quite the opposite," envisions law schools reporting their employment and salary data "*as they see fit*[.]" (*Id.* at 18, emphasis added.)

The text of the HEA and common sense dictate otherwise. The HEA expressly applies to "[e]ach eligible institution"—meaning all accredited law schools nationwide—and expressly

---

[2] Indeed, the Court should take judicial notice of Plaintiffs' lawyers' extrajudicial statements to the media, in which they have recently admitted, to the online legal blog *Above the Law,* that their master strategy is to sue "as many law schools as we can" in 2012 over their employment reporting, as Plaintiffs have sued Cooley here, so Plaintiffs' counsel can "force a global settlement *through the ABA*." (*See* attached Exhibit A, "Calling All Disgruntled Law School Graduates: Will You Ring in the New Year By Suing Your School?", available at http://abovethelaw.com/2011/12/calling-all-disgruntled-law-school-graduates-will-you-ring-in-the-new-year-by-suing-your-school/#more-119258) (emphasis added).

-4-

provides that each law school "shall" collect and report employment and salary data as detailed in the statute, that is, in a uniform way. *See* 20 U.S.C. § 1092(a)(1). The HEA then appoints the federal Department of Education to enforce those reporting requirements across the board—as opposed to leaving it to state bodies, such as state departments of education or quasi-governmental state bar associations, to enforce the requirements in a state-specific, non-uniform way. *See Chae v. SLM Corp.*, 593 F.3d 936, 944 (9th Cir. 2010) ("Congress's direction to the DOE *shows that it aimed for uniformity*") (emphasis added); *see also id.* at 945 ("Congress's instructions to the DOE on how to implement the student-loan statutes carry this unmistakable command: Establish a set of rules that will apply *across the board*") (emphasis added).

And indeed, that "across the board" uniformity makes good sense, especially considering Plaintiffs' allegations here. Plaintiffs allege that they misunderstood Cooley's employment reports, despite the fact that the data was gathered and reported in compliance with the same federal regulations and accreditation standards followed by every accredited law school in the country, and despite the fact that admittedly "basic deductive reasoning" (Am. Compl. ¶ 72) should have told them exactly what the data meant and didn't mean. Imagine what Plaintiffs would say if every law school reported their data differently based on different methodologies. *See Chae*, 593 F.3d at 945 ("were the law to indulge the plaintiffs' California state law claims, and thereby to endorse the possibility of similar claims being asserted under varying state laws in each of the fifty states, it would impair and threaten the efficacy of the federal lending effort for students"). The across-the-board requirements put all law schools on a level playing field and let prospective law students compare apples to apples.

For similar reasons, the ad hoc reporting requirements Plaintiffs seek to impose on Cooley "stand[] as an obstacle to the accomplishment of the full purposes and objectives of Congress," and thus conflict with federal law. *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).

-5-

Plaintiffs' requirements would wreak havoc on Congress's uniform law school employment and salary reporting requirements, and leave prospective law students sifting through a mass of numbers and methodologies, state by state, and even law school by law school. Plaintiffs' claims are preempted by federal law.[3]

## IV. STATUTE OF LIMITATIONS

Plaintiffs concede that their claims are barred in part by the statute of limitations. They allege in the Amended Complaint that their claims relate to unspecified employment information they allegedly relied upon "[i]n applying and deciding to remain enrolled at Thomas Cooley." (Am. Compl. ¶¶ 16-27.) But they concede that the outer edge of the statutory limitations period applicable to their claims is August 10, 2005, (Pls.' Br. at 22), and admit that at least five of them applied to Cooley prior to that date (Am Compl. ¶¶ 17, 19, 20, 24, 25). Thus, Plaintiffs concede that, for those five at least, the statute of limitations bars any claim that they relied upon employment information "[i]n applying" to Cooley. Plaintiffs concede that all that remains of their claims with respect to those five Plaintiffs (and perhaps others) are "claims related to Cooley's [alleged] misleading statements *during* their enrollment." (Pls. Br. at 22; emphasis added.) Those five Plaintiffs (at least) *cannot* allege that they relied upon employment information in *applying to* Cooley.[4]

---

[3] No "presumption against preemption" applies here, contrary to Plaintiffs' argument (*see* Pls. Br. at 15). Plaintiffs say that such a presumption applies because "[c]onsumer protection is a field traditionally regulated by the states[.]" (*Id.*) But the relevant field is not "consumer protection"—rather, it is law school employment and salary reporting. (*See* Cooley's Br. at 21.) Plaintiffs cite no caselaw suggesting that the field of law school employment and salary reporting is a field traditionally regulated by the states, and thus no presumption against preemption applies.

[4] As noted in the Motion to Dismiss at page 26, it appears from the allegations of the Amended Complaint that seven other Plaintiffs may also have applied to Cooley prior to August 10, 2005. (*See* Am. Compl. ¶¶ 16, 18, 21, 22, 23, 26, 27). Their claims relating to any alleged reliance in "applying" to Cooley would also be barred.

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

## V. PLAINTIFFS FAIL TO STATE CLAIMS FOR VIOLATION OF THE MCPA, FRAUD, AND NEGLIGENT MISREPRESENTATION

### A. Plaintiffs' Fail to State a Claim for Violation of the MCPA Because Their Single-Minded Pursuit Was Commercial in Nature and Thus the MCPA Does Not Apply

Plaintiffs concede that their MCPA claim fails if they sought a legal education from Cooley "primarily for business or commercial rather than personal purposes." *Zine v. Chrysler Corp.*, 236 Mich. App. 261, 273 (1999) (*see* Pls.' Br. at 22-26). And Plaintiffs expressly admit that they sought a legal education from Cooley "*for the purpose* of securing full-time, permanent employment upon graduation." (Am. Compl. ¶ 113; emphasis added.) Plaintiffs put it even more bluntly elsewhere in the Amended Complaint: they applied to law school "*with one objective in mind*: to attain the kind of job" that they wanted. (Am. Compl. ¶ 72; emphasis added.) Plaintiffs admit by their own allegations that they sought a legal education from Cooley primarily—indeed, solely—for the business or commercial purpose of obtaining full-time legal employment, rather than for any personal or household use. Thus, their MCPA claim fails as a matter of law. *Zine*, 236 Mich. App. at 273.

Plaintiffs do backflips in their brief trying to avoid their expressly admitted commercial purpose behind their decision to attend Cooley. They point to allegations (missing from the original complaint, but conveniently added to the Amended Complaint after Cooley filed its original motion to dismiss the MCPA claim) that they decided to go to Cooley to "prospectively better" themselves, rather than to use their degrees in an "ongoing business or to start a non-legal business." (Am. Compl. ¶¶ 16-27.) But even those dubious allegations admit a primary business and commercial purpose: They allege that each of them "intended to use his JD degree to prospectively better himself and his personal circumstances *through the attainment of full-time employment in the legal sector*." (*Id.*; emphasis added.) And even within their own brief

Plaintiffs can't keep their stories straight: After proclaiming "prospective betterment" in the MCPA section, Plaintiffs admit in their silent-fraud section that "[t]he value of a Cooley degree is, in part, dependant [sic] on the ability of it [sic] holder obtain [sic] employment for which a Cooley degree is required or preferred." (Pls.' Br. at 40.)

The very nature of this action makes Plaintiffs' acrobatic, double-speaking denial of a business or commercial purpose absurd. The whole point of this case, according to Plaintiffs, is that they didn't get the "kind of job" they wanted (Am. Compl. ¶ 72), not that they weren't "prospectively bettered" or personally enriched in the way they expected to be. The purported purely personal use of their legal education is completely incompatible with their core allegation that after obtaining it, they didn't get the "kind of job" they wanted. (*Id.*) In the face of their repeated admissions and allegations that "*the* purpose" and "one objective" in applying to Cooley was to obtain full-time legal jobs, Plaintiffs' MCPA claim fails as a matter of law.[5]

---

[5] In a last-ditch effort, Plaintiffs argue that their failed MCPA claim should nonetheless proceed to discovery so that they can find a non-commercial purpose. Given Plaintiffs' repeated allegations of a primary business or commercial purpose in attending Cooley, however, Plaintiffs' argument is meritless. Indeed, as this Court has held in granting a Rule 12(b)(6) motion to dismiss an MCPA claim involving nearly the *exact same* facts as here, "the MCPA does not apply" to a former law student's acquisition of a legal education from Cooley where the former student's stated purpose in attending Cooley was "so that he could obtain work[.]" *Baptichon v. Thomas M. Cooley Law School*, 2009 WL 5214911, *6-7 (W.D. Mich. Dec. 28, 2009). This Court in *Baptichon* did *not*, contrary to Plaintiffs' suggestions, allow the case to proceed to discovery to see if the plaintiff could find some non-commercial purpose. *See id.* Plaintiffs claim, illogically, that *Baptichon* is somehow "inapposite," despite being nearly identical to this case, right down to the Cooley degree at issue, and right down to the plaintiffs' admission that they sought the Cooley degree to qualify themselves for legal employment. That's about as apposite as it gets.

Nor do the two cases from the Eastern District of Michigan that Plaintiffs cite save their MCPA claim. Unlike the professional degree Plaintiffs sought here so they could admittedly practice law commercially, one case involved the sale of textbooks—a consumer good covered by the MCPA. *Stalker v. MBS Direct, LLC*, 2011 WL 797981 (E.D. Mich. March 1, 2011). And in the other case, as Plaintiffs acknowledge, there is no discussion of the applicability of the MCPA, no analysis of the plaintiffs' commercial or non-commercial purposes, and no indication that any of the parties questioned the plaintiffs' non-commercial purposes. *Bobbitt v. Academy*

-8-

Plaintiffs' MCPA claim fails as a matter of law for the additional, independent reason that Cooley's provision of legal education is exempt from the MCPA because that transaction is "specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." *Liss v. Lewiston-Richards, Inc.*, 478 Mich. 203, 205-06 (2007) (quoting MCL 445.904(1)(a)). The provision of legal education is highly regulated by both state and federal regulatory boards, including the Michigan Department of Education, the Michigan Board of Law Examiners, the federal Department of Education, and the ABA as a "quasi-governmental" regulatory board expressly approved by the Department of Education, all acting pursuant to statutory authority of the state of Michigan or the United States to accredit and regulate law schools. Plaintiffs' argument that the regulation of legal education isn't "comprehensive" enough to be exempt from the MCPA is flat wrong. (*See* Pls.' Br. at 27-28.) Cooley's very existence as an institution of higher learning accredited to provide legal education depends entirely upon its compliance with the detailed regulations of these various bodies. In light of this, Plaintiffs' MCPA claim must be dismissed.

> **B.** **Plaintiffs' Fraud And Negligent Misrepresentation Claims Fail Because Plaintiffs Failed To Identify Any Specific False Statement On Which Any Of Them Relied, And Failed To Plead Reasonable Reliance**

Plaintiffs say Cooley is "nitpicking" when it points out that Plaintiffs—despite having two chances to state a claim—utterly failed to identify a specific false statement that even one of them actually saw, was aware of, or in fact relied upon specifically when they applied to or decided to remain enrolled at Cooley. (*See* Pls.' Br. at 30.) That's not nitpicking. That's simply pointing out their complete failure to comply with the Federal Rules and the pleading requirements that must be satisfied to state viable claims. Fraud and misrepresentation are very

---

*of Court Reporting, Inc.*, 252 F.R.D. 327 (E.D. Mich. 2008). In short, neither case supports Plaintiffs' argument.

serious charges, not to be made lightly, especially when leveled at a law school. For that reason, Federal Rules 8(a) and 9(b) require plaintiffs who bring lawsuits that are based solely on allegedly false statements that they allegedly relied upon to their detriment, to actually identify the specific false statements they relied on to their detriment, and to do so specifically as to the time, place, and content *of each offending statement*. And the rules require plaintiffs to identify those statements with specificity *in their complaint*—not later, during or after discovery. *See* Fed. R. Civ. P. 9(b). Simply put, Plaintiffs have utterly failed to identify a specific false statement on which even one of them relied in either of their two complaints.

Plaintiffs instead try smoke and mirrors. Plaintiffs say in their brief that "each Plaintiff [identifies] the exact reports *that were available*" or "*were posted*" "*at about the time that*" they applied to or attended Cooley. (Pls.' Br. at 32; emphasis added.) Then, without a single citation to any allegation in the Amended Complaint, Plaintiffs assert that "The FAC also alleges that [Plaintiffs] relied on those misleading reports." (*Id.*) That is simply false. None of the Plaintiffs state—anywhere in the Amended Complaint—that they actually saw, were aware of the existence of, or actually relied on a specific "available" or "posted" report when they applied to or attended Cooley. The most they allege is that the reports were out there, somewhere, at about the same time they were applying to and attending Cooley. That failure is fatal to Plaintiffs' fraud and negligent-misrepresentation claims (Counts II and III). *See* Fed. R. Civ. P. 9(b).

As a last-gasp effort, Plaintiffs beg the Court to allow them to proceed to discovery, apparently to allow them some Timothy Leary-esque quest to probe their own minds to determine whether they ever actually saw and relied on the specific statements they now claim are fraudulent. That's not how it works. Whether Plaintiffs actually saw and relied on the statements they allege are fraudulent *is entirely within their own knowledge*. And the fact that Plaintiffs still have not identified a specific false statement they actually saw and relied on,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

despite having two chances to write their complaint, demonstrates that this failure is not one of "proof" or involving "factual issues that will be further developed at a later phase of the litigation," as Plaintiffs now conveniently assert. (Pls.' Br. at 29, 32.) If Plaintiffs actually saw and relied on the statements they allege are fraudulent, they were required to say so directly in their complaint. Fed. R. Civ. P. 9(b). Obviously Plaintiffs have twice refused to say so directly because they cannot truthfully make the required allegation.

As detailed in Cooley's brief in support of the motion to dismiss at page 32, Plaintiffs' general allegations that they relied on "information posted on TCLS's website," "disseminated to third-party data clearinghouses and publications such as the ABA and *US News*" "and/or" Cooley's "marketing materials" cannot save Plaintiffs' fraud claims. (Am. Compl. ¶¶ 16-27.) These allegations are far too generalized to meet Rule 9(b)'s specificity requirements, which compelled Plaintiffs to allege with specificity the statements they actually relied on, identifying "*at a minimum*" the "time, place, and content of the alleged misrepresentation on which he or she relied." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003) (emphasis added); Fed. R. Civ. P. 9(b). Plaintiffs allege nothing of the sort.

Plaintiffs cite two pre-*Twombly* cases suggesting that Rule 9(b) should be read "liberally," (*see* Pls.' Br. at 31), but nothing in the language of the rule or its purpose supports that reading, and subsequent controlling cases have held otherwise. Rule 9(b) was expressly designed to be a "heightened" pleading requirement for fraud claims because "[c]laims of fraud 'raise a high risk of abusive litigation.'" *U.S. ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 445 (6th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1973 n. 14 (2007)). The heightened pleading requirements are "meant to protect defendants from spurious charges of immoral and fraudulent behavior." *Id.* Thus, "[g]reater precomplaint investigation is warranted in fraud cases because public charges of fraud can do great harm to the

reputation of a business firm or other enterprise." *Id.* (quoting *United States ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 740 (7th Cir. 2007)).

Simply put, when a party alleges fraud, he or she must state *with specificity* the allegedly fraudulent statements upon which he or she relied, and must "allege *facts* showing her reliance on the defendant's misrepresentation." *Dersch v. BAC Home Loan Servicing LP*, 2011 WL 3100561, *5 (W.D. Mich. 2011) (emphasis added). The only thing "liberal" about the rule is that courts liberally grant leave to amend the complaint when it appears the pleading deficiency could be cured by adding factual allegations. Here, Plaintiffs have already amended their complaint and *still* cannot state with specificity the alleged false statements on which they relied. And Plaintiffs do not seek leave to amend again or suggest that they even *could* amend their Amended Complaint to meet the pleading requirements given their inability to identify a specific false statement on which they relied. *See Sault Ste. Marie Tribe of Chippewa Indians v. Hamilton*, 2010 WL 299483, *6 (W.D.Mich. 2010) (dismissing fraud claim where the plaintiffs' fraud allegations "f[e]ll short of compliance with Rule 9(b)" because plaintiffs had failed to "allege when and where one or more fraudulent statements were made" and that the defendant "actually made a statement to them," and plaintiffs "had not sought to amend this claim"). Instead they ask for a pass on the 9(b) requirements and to go directly to discovery.

On the purported reasonableness of their reliance, Plaintiffs weakly assert that they were not required to do "basic deductive reasoning"—their words in paragraph 54 of the Amended Complaint—that would have told them that the employment reports could not possibly have meant what Plaintiffs now say they mean. (*See* Pls.' Br. at 35) (complaining that "Cooley contends that because *Plaintiffs' counsels'* analysis demonstrates that Cooley's employment reports are deceptive and misleading, Plaintiffs should have been able to do the same") (emphasis in original). For the required element of "reasonable" reliance to mean anything at all,

-12-

it certainly means a plaintiff is assumed to have "basic deductive reasoning" skills when viewing an allegedly fraudulent statement. *See Cummins v. Robinson Twp.*, 283 Mich. App. 677, 696 (2009).

Plaintiffs also *nowhere* acknowledge the ready accessibility of the ABA and NALP methodologies that specifically explain exactly what the employment reports meant, and specifically explained that the employment numbers "include graduates employed on a part-time *or* full-time basis in a legal *or* non-legal job," and "may be full-time, *part-time*, temporary, permanent, *law-related or not*." (*See* Exs. D and E to Cooley's Motion to Dismiss; emphasis added.) Plaintiffs also nowhere acknowledge that the United States Code itself provides that the salary data "shall" be "gathered from such sources as alumni surveys." 20 U.S.C. § 1092(a)(1)(R). Plaintiffs thus completely fail to explain how their purported reliance on the employment and salary reports to mean that Cooley's data reflected only full-time legal jobs, and was not gathered from alumni surveys, was anything other than *un*reasonable.

Finally, on "silent fraud"—Plaintiffs now say they meant to allege such a claim, despite calling their claim "Fraud"—Plaintiffs fail to distinguish, or even acknowledge, the controlling Michigan Supreme Court case, *Hord v. Environmental Res. Inst.*, 463 Mich. 399, 412 (2000). *Hord* compelled Plaintiffs to allege a "legal *duty*" to provide the employment data breakdown they now request; "mere nondisclosure is insufficient." *Id.* Plaintiffs ignore *Hord* altogether in their silent-fraud section (*see* Pls.' Br. at 39-41), and identify no such legal duty. Plaintiffs say "Cooley has a fiduciary duty to the Federal government to ensure that Federal monies are properly spent," (Pls.' Br. at 40), but offer no support for the notion that the asserted duty extends beyond Cooley's undisputed compliance with the HEA and DOE, ABA, and NALP

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

regulations and standards. As in *Hord*, therefore, Plaintiffs have failed to state a claim for silent fraud.[6]

All of Plaintiffs' claims fail as a matter of law. The Court should therefore grant Cooley's Motion to Dismiss and dismiss the Amended Complaint with prejudice.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: s/ Brad H. Sysol                                     .
  Michael P. Coakley (P34578)
  Brad H. Sysol (P58138)
  Paul D. Hudson (P69844)
  Attorneys for Defendant Thomas M. Cooley Law School
  150 West Jefferson, Suite 2500
  Detroit, MI 48226
  (313) 963-6420
  coakley@millercanfield.com
  sysol@millercanfield.com
  hudson@millercanfield.com

January 5, 2012

---

[6] Almost as an afterthought, Plaintiffs halfheartedly suggest in a later footnote that *Hord* is "distinguish[able]" because the employment information there was "true, but was true for a different year than for which the plaintiff assumed it was true," while "Plaintiffs here allege that the employment statistics were false and misleading." (Pls.' Br. at 38 n.21.) But that purported distinction rests on the false premise that Plaintiffs have adequately pleaded that Cooley's employment reports were in any way false. Plaintiffs have not alleged a single *fact* supporting their conclusory assertions that Cooley's employment reports were "false" or "demonstrably false." (*See* Am. Compl. ¶¶ 4-5.) At any rate, that Plaintiffs have purportedly alleged that the employment reports are "false and misleading" is not a distinguishing fact from *Hord* at all; the plaintiff there likewise alleged that the employment information provided to him was false and misleading because it gave him a false impression of the company's financial health. *Hord*, 463 Mich. at 412. *Hord* is indistinguishable, controlling, and fatal to Plaintiffs' claims.

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

**CERTIFICATE OF ELECTRONIC SERVICE**

    I hereby certify that on January 5, 2012, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the attorneys of record:

                     MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

              By: s/ Brad H. Sysol
                   Michael P. Coakley (P34578)
                   Brad H. Sysol (P58138)
                   Paul D. Hudson (P69844)
                   Attorneys for Defendant Thomas M. Cooley Law School
                   150 West Jefferson, Suite 2500
                   Detroit, MI 48226
                   (313) 963-6420
                   coakley@millercanfield.com
                   sysol@millercanfield.com
                   hudson@millercanfield.com

January 5, 2012

19,690,931.2\018763-00021